IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| LEZLIE M. CARDWELL, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | No. CIV-16-1222-D |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, | ) ) ) ) ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter AR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings.

I. <u>Administrative History and Medical Record</u>

Plaintiff filed applications for benefits in July 2013, alleging that she was

disabled beginning May 1, 2013. As disabling impairments, Plaintiff described fibromyalgia, chronic fatigue, carpal tunnel syndrome in both hands and arms, a back impairment, high blood pressure, obstructive sleep apnea, depression/memory loss, and migraine headaches. (AR 213). In a written Function Report, Plaintiff stated: "I have a hard time standing, sitting, or walking for any length of time at all. I wake up with headaches almost daily and when I wake up I feel as though someone wrapped me in a sheet and beat me with a bat. My whole body feels like one huge bruise and I have no energy at all and I find it hard to focus on anything for long and often cry because I use[d] to be so active." (AR 223). Plaintiff has a high school equivalency degree and previous work as a convenience store clerk, pawnbroker, shift manager, and stocker/cashier. (AR 60).

  The medical record reflects that Plaintiff underwent a total hysterectomy in September 2013. Post-operatively, Plaintiff's treating physician noted that her incisions were healing very well in October 2013. (AR 402). One week after her surgery, Plaintiff underwent a consultative physical examination conducted by Dr. Hall. Dr. Hall noted that in a physical examination Plaintiff exhibited weak heel and toe walking, decreased ranges of motion in her back and shoulders, 18 of 18 positive tender points, and a very slow but steady and safe gait without the use of assistive devices. (AR 393-94). The assessment was fibromyalgia by history and post-operative hysterectomy.

In October 2013, Plaintiff underwent a consultative mental evaluation conducted by Dr. Wallace. Per Plaintiff's report, Dr. Wallace noted Plaintiff had never received inpatient mental health treatment, but had undergone counseling about ten years previously. Plaintiff also stated that she was prescribed anti-depressant medication by her pain management physician but she could not afford the medication. Based on an interview, mental status examination, and cognitive assessment testing, Dr. Wallace opined that Plaintiff exhibited average intellectual functioning. Dr. Wallace's diagnostic impression was major depressive disorder, recurrent, moderate to severe without psychotic features. (AR 436).

There are notes of treatment of Plaintiff by Dr. Adams for pain management beginning in January 2013 through November 2014. In September 2014, Dr. Adams noted that Plaintiff returned for follow-up treatment, that she was taking her prescribed pain, nerve pain, anti-nausea, and anti-depressant medications, and that she rated her pain as 8 out of 10 on the verbal pain scale. Dr. Adams noted Plaintiff walked with an antalgic gait and he increased the dosage of her nerve pain medication. Dr. Adams noted diagnostic impressions of chronic pain, cervical disk degeneration, migraine headaches, lumbago, left shoulder pain, right hip bursitis, entrapment neuropathy, and fibromyalgia. Dr. Adams also noted that Plaintiff had a positive antinuclear antibody test.[1]

---

[1] An antinuclear antibody test is used to determine whether an individual has an autoimmune

In October 2014, Plaintiff sought treatment at a hospital emergency room for fatigue, headache, and shortness of breath. Dr. Davis, the attending physician, noted that in an examination Plaintiff exhibited normal strength, no tenderness, no edema, no neurological or sensory deficit, normal motor behavior, normal speech, normal coordination, and normal EKG testing. Given her reported medical history of fibromyalgia, Dr. Davis noted that her symptoms were "perhaps . . . a flare up of her fibromyalgia" but that no definitive cause for her symptoms was found. Dr. Davis prescribed anti-nausea medication, and Plaintiff was discharged in stable condition.

At a hearing conducted on December 5, 2014, before Administrative Law Judge Hamilton ("ALJ"), Plaintiff appeared with counsel and testified that she was being treated by a pain management physician for pain due to fibromyalgia, carpal tunnel syndrome, and headaches, but she was not being treated by a rheumatologist because of lack of insurance. Plaintiff testified that her pain management doctor also prescribed anti-depressant medication. Plaintiff testified that she had a "bad day" about "half the month" in which she had difficulty getting out of bed due to pain. (AR 52-53). A vocational expert ("VE") also testified at the hearing and responded to questioning concerning the availability of jobs for an individual with a residual functional capacity as described by the ALJ.

---

disorder such as lupus or rheumatoid arthritis.

II. Agency Decision

On April 24, 2015, the ALJ issued a decision finding Plaintiff was not disabled and therefore not entitled to disability benefits. (AR 17-32). Following the five-step sequential evaluation process required by Social Security Administration regulations, see Fisher-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005)(explaining procedure); 20 C.F.R. §§ 404.1520, 416.920, the ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017, and that she had not engaged in substantial gainful activity since May 1, 2013, her alleged disability onset date. (AR 19). At the second step of the required procedure, the ALJ found that Plaintiff had severe impairments due to obesity, degenerative disc disease of the lumbar spine, fibromyalgia, high blood pressure, migraine headaches, apnea, and depression. (AR 19).

The ALJ next determined that Plaintiff's impairments, considered alone or in combination, did not meet or medically equal the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 26). Reaching the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level, except that she could only occasionally climb ladders, ropes, or scaffolds, could no more than frequently kneel, crouch, or crawl, could perform work involving only simple, routine, and repetitive tasks, and could only occasionally interact with co-workers, supervisors, and the public. (AR

28). The ALJ found that Plaintiff was capable of performing her past relevant work as a convenience store clerk, pawn broker, shift manager, and cashier/stocker, because "[t]his work does not require the performance of work-related activities precluded by the claimant's [RFC]." (AR 32). Based on these findings, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.

The Appeals Council denied Plaintiff's request for review, stating in a Notice of Appeals Council Action dated August 18, 2016, that "[w]e found no reason under our rules to review the [ALJ's] decision." (AR 5). Consequently, the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

III. General Legal Standards Guiding Judicial Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole.

Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The Social Security Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401 *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord, 42 U.S.C. § 1382c(a)(3)(A); see 20 C.F.R. § 416.909 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than twelve months. Barnhart v. Walton, 535 U.S. 212 (2002).

In this case, the ALJ determined that Plaintiff was capable of performing several of her previous jobs. Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in [her] prior work activity." Turner v. Heckler, 754 F.2d 326, 328 (10th Cir. 1985). Only if Plaintiff makes that prima facie showing does the burden shift to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. Id.

IV. Issues Presented for Judicial Review

Plaintiff challenges the ALJ's decision in several respects, contending that (1)

7

the ALJ failed to properly evaluate her ability to perform her past relevant work under Social Security Ruling ("SSR") 82-62 and Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996); (2) failed to properly weigh the medical source opinion of Plaintiff's treating physician, Dr. Adams, and the opinions of the state agency medical consultants; and (3) failed to properly evaluate Plaintiff's credibility.

V. Evaluation of Past Relevant Work and RFC Determination

At the hearing, the ALJ elicited the testimony of a VE concerning the demands of Plaintiff's previous jobs. The VE testified that Plaintiff had previously worked as a convenience store clerk and that this job is described in the Dictionary of Occupational Titles ("DOT") as light work "with an SVP of 2." (AR 59-60). The VE testified that Plaintiff had also previously worked as a pawn broker, which is "light work" with an "SVP of 6," as a shift manager, which is "light work and SVP of 2," and as a stocker/cashier, which is "heavy work, with an SVP of 4." (AR 60).

In a hypothetical inquiry, the ALJ asked the VE if any of these jobs would be available for an individual with Plaintiff's age, education, and work experience who could perform "work in the light range," with lifting up to 20 pounds occasionally, lifting and carrying 10 pounds frequently, standing and walking for about six hours, sitting for up to six hours in an eight-hour work day, with normal breaks, and limited to simple, routine, repetitive tasks and occasional interaction with co-workers, supervisors, and the public. The VE responded that such an individual could

8

perform the job of a convenience store clerk, but the other jobs would be eliminated due to the functional restrictions imposed in the hypothetical. (AR 60). In a second hypothetical inquiry, the ALJ asked the VE if any of these jobs would be available for an individual who could perform the same job-related functions and who could only occasionally climb ladders, ropes, or scaffolds and could frequently kneel, crouch, or crawl. The VE testified that such an individual could perform the convenience store clerk position. (AR 61).

The ALJ determined in the decision that Plaintiff was capable of performing ALL FOUR of her previous positions, given the RFC determination. However, the VE testified that an individual with the RFC as found by the ALJ could perform ONLY the Plaintiff's past job as a convenience store clerk. There is no evidence in the record to support the ALJ's finding that Plaintiff could perform her previous jobs as a pawnbroker, shift manager, or cashier/stocker. Thus, the ALJ erred in finding that Plaintiff was not entitled to benefits because she was capable of performing her past relevant jobs as a pawnbroker, shift manager, or cashier/stocker.

With respect to the remaining previous job as a convenience store clerk, Plaintiff contends that the ALJ erred in failing to make findings regarding the mental requirements of this job. Defendant Commissioner responds that no error occurred in the ALJ's analysis and that there is substantial evidence to support the ALJ's step four nondisability determination.

Step four of the requisite sequential evaluation process is comprised of three phases. Winfrey, 92 F.3d at 1023. First, the ALJ must determine the claimant's physical and mental RFC. Id. (citing SSR 86-8). Second, the ALJ must determine the physical and mental demands of the claimant's past relevant work. Id. (citing 20 C.F.R. § 404.1520(e)). Third, the ALJ must determine whether the claimant can "meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." Id. (citing SSR 82-62; Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993)). "At each of these phases, the ALJ must make specific findings." Id. (citing Henrie, 13 F.3d at 361).

Plaintiff contends that the ALJ failed to determine the mental requirements of Plaintiff's past relevant work other than determining the specific vocational preparation ("SVP") level required for each of the Plaintiff's previous jobs. The record of Plaintiff's administrative hearing, however, reflects that the ALJ fully explored the demands of Plaintiff's previous jobs with Plaintiff and with the VE. The VE described the Plaintiff's past jobs in terms of skill and exertional levels, identified the DOT code and SVP level for each of those jobs, and testified that an individual with the physical and mental functional limitations described by the ALJ could perform Plaintiff's previous job as a convenience store clerk. In determining that Plaintiff could perform her past relevant work, the ALJ noted the VE's testimony.

As found by the Tenth Circuit in a case involving similar circumstances, and to the extent the ALJ found that Plaintiff was capable of performing her past relevant work as a convenience store clerk, there is "nothing improper" with this approach. See Best-Willie v. Colvin, 514 F. App'x 728, 738 (10th Cir. 2013)(unpublished op.).[2]

## VI. Evaluation of Medical Source Opinions

Plaintiff contends that the ALJ erred in evaluating the opinion of her treating physician, Dr. Adams. The record contains a medical source statement completed by Dr. Adams on November 17, 2014. In this statement, Dr. Adams completed a thirteen-question form, opining that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, could continuously stand and walk less than 15 minutes, could stand and walk for less than 1 hour during an 8-hour day, could continuously sit for about 3 hours, could sit for 4 hours during an 8-hour day, needed to lie down or recline approximately once per hour, could occasionally balance, stoop, kneel, crouch, or climb, needed "frequent breaks," should avoid concentrated exposure to

---

[2] In Best-Willie, the ALJ requested information from the vocational expert concerning Best-Willie's past relevant work and the expert testified concerning the skill and SVP levels of each of Best-Willie's previous jobs. The Tenth Circuit concluded that "the ALJ obtained information concerning the physical and mental demands of Best-Willie's past relevant work and appropriately relied on the vocational expert's testimony in her decision." Id. Next, the ALJ "posed a hypothetical to the expert, including Best-Willie's postural limitations and mental limitations, and asked whether such an individual could perform Best-Willie's past relevant work. The expert responded in the affirmative. In concluding that Best-Willie could perform that past relevant work, the ALJ notes the expert's testimony. We perceive nothing improper with the ALJ's analysis." Id.

11

fumes, odors, dusts, and gases, should avoid even moderate exposure to extreme cold, extreme heat, high humidity/wetness, vibration, and heights, and would be absent from work about one day per month. (AR 498-99).

The record also contains a physical RFC assessment by a state agency medical consultant, Dr. Baldwin, who opined in November 2013 that Plaintiff was capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying 10 pounds, standing and/or walking for about 6 hours in an 8-hour workday, and sitting about 6 hours in an 8-hour workday, with no other limitations. (AR 72). Dr. Dees submitted the same physical RFC assessment on January 20, 2014. (AR 112-13).

Another state agency medical consultant, Dr. "CCG," opined in November 2013 that with respect to Plaintiff's mental RFC for work Plaintiff was capable of performing simple and some complex tasks, relating to others on a superficial basis, and adapting to a work situation. (AR 75). This same opinion was adopted by Dr. "LML," another state agency medical consultant, on January 10, 2014. (AR 101).

The ALJ recognized in the decision that Dr. Adams had submitted a medical source opinion. The ALJ determined that the opinion was entitled to "some weight" because "the objective evidence does not show that the claimant is as limited as Dr. Adams states." (AR 31). The ALJ also recognized that "DDS Medical Consultants" had submitted opinions concerning Plaintiff's RFC for work. The ALJ determined

that these opinions were entitled to "great weight." (AR 31).  This is the extent of the ALJ's analysis of the medical source statements appearing in the record.

An ALJ must evaluate all medical opinions in the record and discuss the weight assigned to each opinion. 20 C.F.R. §§ 404.1527(c), (e)(2)(ii), 416.927(c), (e)(2)(ii); Keyes-Zachary v. Astrue, 695 F.3d 1156, 1161 (10th Cir. 2012).  When "there are differences of opinion among the medical sources, the ALJ must explain the basis for adopting one and rejecting another, with reference to the factors governing the evaluation of medical-source opinions set out in 20 C.F.R. §§404.1527(d)-(f), 416.927(d)-(f)." Reveteriano v. Astrue, 490 Fed. App'x 945, 947-48 (10th Cir. 2012)(unpublished op.).

The ALJ's decision does not include any analysis of the conflicting opinions entered by Dr. Adams and the state agency medical consultants who assessed Plaintiff's physical RFC for work.  The ALJ merely stated conclusions without reference to portions of the medical record or to the factors set forth in the regulations for evaluating medical source opinions.  The ALJ failed to "give good reasons for the weight assigned to [the] treating physician's opinion" that are "sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reason for that weight." Allman v. Colvin, 813 F.3d 1326, 1332 (10th Cir. 2016)(internal quotation marks, ellipsis, and citation omitted). Accordingly, the ALJ erred in analyzing the medical source opinions in

13

the record, and this error warrants reversal of the Commissioner's decision for the proper analysis.

Moreover, the ALJ found that Plaintiff had a severe impairment due to fibromyalgia, a disease that the agency has recognized is a "complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). Fibromyalgia is indicated by positive tender points on physical examination and an array of symptoms, including fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, and irritable bowel syndrome. Id. at *2-3. The record reflects that Dr. Adams provided long-term treatment for Plaintiff's fibromyalgia-related pain complaints in multiple joints and muscles, including Plaintiff's back, neck, shoulders, hands, and fingers, as well as her fatigue and depression disorder related to the disease. Consistently, Dr. Hall found the presence of 18 out of 18 tender points. In light of this evidence, the ALJ erred in discounting Dr. Adams' medical source opinion by making only a bare reference to an inconsistency between the opinion and "objective evidence."

Further, the ALJ's conclusions regarding Dr. Adam's medical source opinion affected her assessment of the agency medical consultants' opinions. The ALJ gave only "some weight" to Dr. Adams' medical opinion and gave "great weight" to the agency medical consultants' RFC assessments without providing any basis other

than the conclusion that "the objective evidence does not show that the claimant is as limited as Dr. Adams states." (AR 31). The ALJ previously noted that Plaintiff's allegations of disabling pain and fatigue were not credible because she "has had no injections, no surgery and no physical therapy for two years. She also has not seen an orthopedic physician. She has no ongoing treatment by a rheumatologist." (AR 31). Nothing in the record indicates that Plaintiff's fibromyalgia would improve with any of these treatment modalities or with treatment by other specialists. The ALJ erred in both discounting Dr. Adams' opinion and in discounting Plaintiff's credibility without sufficient grounds to do so.

Additionally, Plaintiff stated that she was not receiving treatment other than pain management because of a lack of medical insurance, and the ALJ failed to consider this rationale. It appears that the ALJ discounted Dr. Adams' opinion merely because it was based on Plaintiff's subjective reports, even though fibromyalgia "is diagnosed entirely on the basis of patients' reports of pain and other symptoms." Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004). This decision is flawed. See Sanchez v. Astrue, 2009 WL 4810696, *4 (D.Colo. 2009)("[A] physician's reliance on a plaintiff's subjective reports is not in itself sufficient ground to discredit her opinion."). Accordingly, the Commissioner's decision should be reversed and remanded for further administrative proceedings.

# RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter REVERSING the decision of the Commissioner to deny Plaintiff's applications for benefits and REMANDING the case to the Commissioner for further administrative proceedings. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before August 23rd, 2017, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this 3rd day of August, 2017.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE